UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | CASE NO.: 19-12337 |
| | * | |
| ROYAL ALICE PROPERTIES, LLC | * | SECTION "A" |
| | * | |
| Debtor | * | CHAPTER 11 |
| | * | |

*************************************

**CHAPTER 11 PLAN DATED FEBRUARY 5, 2020**
**FILED BY ROYAL ALICE PROPERTIES, LLC**

ARTICLE I
INTRODUCTION

Royal Alice Properties LLC ("Debtor"), as Debtor and Debtor-in-Possession in the captioned case pending before the Bankruptcy Court, hereby proposes this Chapter 11 Plan (the "Plan") to resolve the outstanding Claims against and Interests in the Debtor.  All Creditors, Interest holders (as these terms are defined herein) and other parties-in-interest should refer to the Disclosure Statement (as this term is defined  herein) for a discussion of Debtor's history, assets, and historical financial data, and for a summary and analysis of this Plan and certain related matters.

All holders of Claims against and Interests in Debtor are encouraged to read this Plan, the Disclosure Statement and the related solicitation materials in their entirety before voting to accept or reject this Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, Debtor expressly reserves the right to alter, amend, strike, withdraw or modify this Plan one or more times before the Effective Date.

## ARTICLE II

### DEFINITIONS AND RULES OF CONSTRUCTION

**A.     Definitions.**

In addition to such other terms as are defined in other Sections of this Plan, the following terms (which appear in this Plan as capitalized terms) have the following meanings as used in this Plan.

1.     "**Administrative Claim**" means a claim for costs and expenses of administration of the Reorganization Case under Section 503(b) of the Bankruptcy Code entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code.

2.     "**Adversary Proceeding**" mean that certain adversary proceeding styled *Royal Alice Properties, LLC v. AMAG, Inc.*, Adv. No. 19-01133 filed in the Bankruptcy Court.

3.     "**Allowed Administrative Claim**" means all or that portion of an Administrative Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

4.     "**Allowed Unsecured Claim**" or "**Allowed Interest**" means, respectively, except as otherwise allowed or provided for in the Plan or a Final Order of the Bankruptcy Court, a Claim or an Interest, proof of which was timely and properly Filed or, if no proof of claim or proof of interest was Filed, which has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which:

(a)     no objection to the allowance thereof has been interposed on or before the later of: (i) sixty (60) days after the Effective Date, or (ii) such other applicable period for objection as may be fixed or extended by the Court, or

(b)     any objection thereto has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

5.     **"Allowed Secured Claim"** means all or that portion of the Secured Claim which has been allowed pursuant to a Final Order.

6.     **"Avoidance Actions"** means all of the Debtor's and the Estate's rights and claims under sections 541 through 553 of the Bankruptcy Code, inclusive, or under any similar or related state or federal statute or common law, whether or not an action is initiated on or before the Effective Date.

7.     **"Ballot"** means the form distributed with the Disclosure Statement to each holder of an Impaired Claim on which the holder is to indicate acceptance or rejection of the Plan.

8.     **"Balloting Deadline"** means the date and time, as set by an Order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots must be received at the address set forth used for voting on the Plan, as such date may be extended by an order.

9.     **"Bankruptcy Code"** means Title 11 of the United States Code, as amended from time to time.

10.     **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Louisiana, or, in the event such court ceases to exercise jurisdiction over the Reorganization Case, such court or adjunct thereof that exercises jurisdiction over the Reorganization Case in lieu of the United States Bankruptcy Court for the Eastern District of Louisiana.

11.     **"Bankruptcy Rules"** means collectively, the (a) Federal Rules of Bankruptcy Procedure, (b) Federal Rules of Civil Procedure and, (c) Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Case or proceedings therein, as the case may be.

12.     **"Bar Date"** means the deadline for filing proofs of claim asserting a Claim

that arose or is deemed to arise on or before the Petition Date, as established by the Bar Date Order, the Plan or other order of the Bankruptcy Court; specifically, December 2, 2019, 2019 at 4:30 PM CDT was established as the bar date for the filing of proofs of claim against Debtor by all persons, corporations, partnerships, limited liability companies and all other non-governmental unit entities and February 26, 2020 at 4:30 PM CDT was established as the bar date for the filing of proofs of claim against Debtor by all governmental units as that term is defined by the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

13. **"Bridge Financing"** means the loan and security agreement defined in Paragraph 6.4 of the Plan and attached as Exhibit A to the Plan.

14. **"Business Day"** means any day other than a Saturday, Sunday or Federal holiday in the United States.

15. **"Cash"** means legal tender of the United States of America, cash equivalents, and readily marketable securities or instruments, including but not limited to, bank deposits, accounts, certified or cashiers checks, timed certificates of deposit issued by any bank, commercial paper, and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof.

16. **"Causes of Action"** means, without limitation, any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, debts, sums of money, damages, judgments, claims and demands, actions, defenses, offsets, powers (including all police, regulatory, and enforcement powers and actions that may be taken), privileges, licenses, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whatsoever, whether known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or tort, in law, equity or otherwise,

whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable. For avoidance of doubt, Causes of Action include, but are in no way limited to (a) damages, (b) the recovery of monies, (c) lien avoidance, subordination, surcharge, recharacterization, rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (d) tax refunds, (e) injunctive, equitable, or other relief, (f) claims pursuant to Section 362 of the Bankruptcy Code, (g) such claims and defenses as fraud, mistake, duress, and usury, (h) Avoidance Actions, and (i) all causes of action that may be directly or derivatively asserted on behalf of the Debtor, its Estate, or the Reorganized Debtor.

17. **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

18. **"Claimant"** means the holder of a Claim.

19. **"Class"** means a category of holders of Claims or Interests classified together pursuant to section 1123(a)(1) of the Bankruptcy Code.

20. **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

21. "**Confirmation Hearing**" means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of the Plan, including any continuances thereof.

22. **"Confirmation Order"** means the order of the Bankruptcy Court entered following the Confirmation Hearing that confirms the Plan.

23. **"Debtor"** means Royal Alice Properties LLC.

24. **"Debtor in Possession"** means the Debtor between the Petition Date and the

Effective Date.

25.     **"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

26.     **"Disallowed Interest"** means an Interest or any portion thereof that has been disallowed by a Final Order or a settlement.

27.     **"Disclosure Statement"** means the Disclosure Statement for the Debtor to accompany the Plan, as modified or amended, filed with and approved by the Bankruptcy Court on [INSERT], 2020.

28.      **"Disputed Claim"** or **"Disputed Interest"** mean any Claim or Interest that is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest nor a Disallowed Interest, as the case may be.  In the event that any part of a Claim or Interest is disputed, such Claim or Interest in its entirety shall be deemed to constitute a Disputed Claim or Disputed Interest for purposes of distribution under this Plan unless a Final Order has been entered providing otherwise.  Without limiting any of the foregoing, a Claim or Interest that is the subject of a pending objection, motion, complaint, counterclaim, setoff, Avoidance Actions, litigation claim or

other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed to constitute a Disputed Claim or Disputed Interest, as the case may be.

29. **"Effective Date"** means the date that occurs fourteen (14) days after the Confirmation Order becomes a Final Order.

30. **"Estate"** means the estate created in the Reorganization Case under section 541 of the Bankruptcy Code.

31. **"File"** or **"Filed"** means filed with the Bankruptcy Court in the Reorganization Case, as reflected on the official docket of the Bankruptcy Court for the Reorganization Case.

32. **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for reargument or rehearing pending; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule, may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

33.    **"Impaired"** means a Claim or Interest or a Class of Claims or a Class of Interests that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

34.    **"Interest"** means the holder of any current or former holder of an "equity security" (as defined in Section 101(16) of the Bankruptcy Code).

35.    **"Lien"** means any lien, lease, right of first refusal, servitude, claim, pledge, option, charge, hypothecation, easement, security interest, right-of-way, encroachment, mortgage, deed of trust, and/or any other encumbrance, restriction or limitation whatsoever.

36.    **"Petition Date"** means August 28, 2019.

37.    **"Plan"** means this plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time by the Debtor or the Reorganized Debtor in accordance with the Bankruptcy Code and Bankruptcy Rules.

38.    **"Plan Assets"** means (1) all Debtor's Cash, and receivables derived from rent due and paid pursuant to the terms of the Real Property Leases (2) all insurance premiums, policies, insurance rebates, contracts and coverage obtained by Debtor and all rights to insurance proceeds or other contracts of insurance or indemnity (or similar agreement) recoveries; (3) the Real Property Assets and all net proceeds from the disposition or mortgage of the Real Property Assets; and (4) all proceeds of Causes of Action.

39.    **"Real Estate Financing"** mean the sale or mortgage of the Real Property Assets as provided in Paragraph 6.5 of the Plan.

40.    **"Real Property Assets"** and **"Real Property Leases"** means the interests in real property defined as follows:

(a)    **"900 Royal"** means fee simple title to the real property commonly known as 900 Royal St., New Orleans, LA 70116, comprised of (i) a first-floor commercial space leased

to RSB for a term of 20 years commencing on January 1, 2018 for use in operation of "Petit Amelie" as a restaurant business and (ii) second, third and fourth-floor residence occupied by Susan Hoffman and leased to Picture Pro LLC, managed by Peter Hoffman, for a term of 20 years commencing on January 1, 2018.

(b) **"Unit E 906 Royal"** means Unit E of the Miltonberger Homeowners Association which owns fee simple title to the real property commonly known as 906 Royal St., New Orleans, LA 70116, currently leased to Leo Duvernay, LLC as office space on a month-to-month basis.

(c) **"Unit C 912 Royal"** means Unit C of the Princess of Monaco Homeowners Association which owns fee simple title to the real property commonly known as 912 Royal St., New Orleans, LA 70116, comprised of an historic courtyard, carriage house and first floor servant's quarters, currently leased to RSB for a term of 20 years commencing on January 1, 2018 for use in operation of "Café Amelie" as a restaurant business.

41. **"Reorganization Case"** means this bankruptcy case under chapter 11 of the Bankruptcy Code.

42. **"Reorganized Debtor"** means the Debtor, as revested with property of the Estate to the extent provided in this Plan, on or after the Effective Date.

43. **"RSB"** means Royal Street Bistro, LLC, a Louisiana limited liability company, owned by the Katrin And Cassia Hoffman Trust, established under the laws of California and the owner and operator of "Petit Amelie" and "Café Amelie."

44. **"Scheduled"** means the claims set forth, stated or listed on the Schedules.

45. **"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders Filed by the Debtor under the Bankruptcy Rules, as the same have been or may

be amended from time to time before the Effective Date.

46.     **"Secured Claim"** means the Claim of AMAG, Inc. that is secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon the Real Property Assets, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order pursuant to Section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by a Debtor or Reorganized Debtor and the Holder of such Claim.

47.     **"Secured AMAG Substitute Note"** means a secured promissory note of the Reorganized Debtor in the amount if any by which the Allowed Secured Claim of AMAG, Inc. is in excess of $2,750,000 in form and substance approved by the Court as fair and equitable to the holder of the Allowed Secured Claim.  The Secured AMAG Substitute Note shall be  (a) due and payable in five (5) years from the date issued;  (b) prepaid upon the sale of 900 Royal or the RSB restaurant businesses;  (c) bear interest paid current by the Reorganized Debtor at a rate approved by the Bankruptcy Court based on the principles set forth in <u>Till v. SCB Credit Corp.</u>, 541 U.S. 465, 476 & n. 14 (2004); and (d) subordinated to the mortgage on the Real Property Assets as part of the Bridge Loan and Real Estate Financing.

48.     **"Unsecured Claim"** or **"Unsecured Deficiency Claim"** means any claim that is not an administrative Claim, Priority Claim, Secured Claim, or a Claim otherwise specifically classified in another class in this Plan.  Unsecured Claims shall not include any post-petition interest incident to such Unsecured Claim and shall not include penalties that were assessed incident to such Claim either before or after the Petition Date.

## ARTICLE III
## <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

Claims and Interests are divided into the following Classes under the Plan:

3.1     Class 1:  Class 1 shall consist of the Allowed Secured Claim.

3.2     Class 2:  Class 2 shall consist of the Allowed Unsecured Claims.

3.3     Class 3:  Class 3 shall consist of the Allowed Interests.

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE CLAIMS AND CLASSES OF CLAIMS AND INTERESTS

**A. Distribution of Plan Assets.**

On the Effective Date, the Bridge Financing shall be distributed in the following order and manner and in accordance with the terms set forth below:

| | |
|---|---|
| Bridge Financing | $3,375,000.00 |
| Interest Reserve | $(318,750.00) |
| Origination Fee | $(101,250.00) |
| Admin. Deposit | $(5,000.00) |
| Due Diligence | $(15,000.00) |
| AMAG, Inc. | $(2,750,000.00) |
| Pontchartrain   Cap. Fee | $(168,750.00) |
| Net | $16,250.00 |

Within fourteen (14) calendar days of receipt of funds, the Real Estate Financing shall be distributed in the following order and manner and in accordance with the terms set forth below:

First, to the payment in full of the Bridge Financing.

Second, to the payment of the Secured AMAG Substitute Note in the amount if any by which the Allowed Secured Claim exceeds $2,750,000.

Third, after payment in accordance with the Plan has been made to the holders of allowed claims as described above, and to the extent that any Plan Assets remain after such payment, such remaining Plan Assets shall be distributed *pro rata* to the holders of Allowed Unsecured Claims in Class 3 until the Class 3 creditors receive payment equal to their Allowed Unsecured Claims.

Fourth, after payment in accordance with the Plan has been made to the holders of allowed claims as described above, and to the extent any Plan Assets remain after such payments, such remaining Plan Assets shall be distributed *pro rata* to Allowed Interest holders.

**B.    Treatment of Unclassified Claims.**

(a)    *Administrative Expense Claims.*  The Debtor shall pay to each holder of an Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim on the latest of (i) the Effective Date, (ii) the date such Administrative Claim becomes  an Allowed Administrative Claim or (iii) the date such Allowed Administrative Claim is due in accordance with the terms and conditions of the particular transactions or governing documents provided, however, that Allowed Administrative Claims (other than Claims under Section 330 of the Bankruptcy Code) representing obligations incurred in the ordinary course of business of or assumed by the Debtor shall be paid in full and performed by the Debtor in the ordinary course of business in accordance with the terms and conditions of the particular transactions and any agreements relating thereto.

(b)    *Administrative Claim Bar Date.*  The holder of an Administrative Claim other than (i) an Allowed Administrative Claim or (ii) an Administrative Claim that represents a liability incurred by the Debtor in the ordinary course of business, must (a) file a proof of Administrative Claim on or before the Administrative Claims Bar Date, which is established as being a date that is sixty (60) days after the Confirmation Date and (b) serve a copy of such proof of Administrative Claim upon the Debtor or, after the Effective Date, the Reorganized Debtor.   Failure to timely file such proof of Administrative Claim shall result in the Administrative Claim being forever barred and discharged.  An Administrative Claim other than a Claim for Professional Charges, proof of which has been timely filed, shall become an Allowed Administrative Claim if no objection thereto is filed within thirty (30) days after the later of the

Confirmation Date and the date of filing and service of such proof of Administrative Claim.  If an objection is filed within such thirty (30) day period, the Administrative Claim shall only become an Allowed Administrative claim to the extent allowed by Final Order.

(c)    *Professional Compensation and Reimbursement Claims.*  All entities seeking an award by the Bankruptcy Court for Professional Charges incurred through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code (a) will file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date by the date that is sixty (60) days after the Confirmation Date or such other date which may be ordered by the Bankruptcy Court and (b) if granted, such award by the Bankruptcy Court, will be paid in full in such amounts as are Allowed by the Bankruptcy Court on or before the later of (i) ten (10) days after the date the Administrative Expense claim becomes an Allowed Administrative Expense Claim, or (ii) the Effective Date.  The Allowed Claims of Chapter 11 Professionals for Professional Charges will be paid from the Cash available on the Effective Date.

To the extent deemed necessary, the Debtor shall also withhold from Cash available on the Effective Date and pay to the Congeni Law Firm, LLC to be held in trust in its IOLTA all amounts necessary to pay the estimated Professional Charges of the Chapter 11 Professionals which have not been Allowed or paid as of the Effective Date provided that such Chapter 11 Professionals provide such estimates on or prior to the Effective Date.

**C.    Treatment of Classified Claims**

**1.    Class 1:  Allowed Secured Claim.**

**(a)    Treatment.**  Except to the extent that the holder of an Allowed Secured Claim agrees to different treatment and subject to Paragraphs 6.4 and 6.5 of the Plan, in full

satisfaction, settlement, release, discharge of, and in exchange for the Allowed AMAG Secured Claim, the Secured Creditor will receive the amount of the Allowed Secured Claim in cash up to $2,750,000 on the Effective Date and the balance of the Allowed Secured Claim shall be the face amount of the Secured AMAG Substitute Note.

The Secured AMAG Substitute Note shall continue to be secured by the Real Property Assets and Real Property Leases, subject to the first Lien in favor of the Bridge Financing lender. Except as provided for in the Plan, the AMAG loan documents evidencing the Liens in favor of AMAG shall not be affected by the discharge granted in this case and/or amended, except that such Liens shall be subordinate to the Bridge Financing lender's Liens.

AMAG, Inc. shall not be entitled to an Administrative Claim, unsecured deficiency Claim or any other claim against the Debtor.

(b) **Liens Proceeds of Sale(s)/ Financing**. Subject to Articles 6.4 and 6.5, the holder of the Allowed Secured Claim shall retain its Liens and such Liens shall attach to the net proceeds from the sale, disposition or mortgage of the Real Estate Assets through the Bridge Financing and the Real Estate Financing.

(c) **Impairment.** Class 1 Claims are Impaired. Therefore, the holder of Class 1 Claim will have the right to vote to accept or reject the Plan. However, the Plan is fair and equitable to the holder of the Class 1 Claims as required by Section 1129(b) of the Bankruptcy Code and this Plan may be confirmed without the approval of that holder. If the holder of the Class 1 Claim fails to submit a timely ballot with respect to its Class 1 Claim, that holder will be deemed to have accepted the Plan.

2. **Class 2: Allowed Unsecured Claims.**

(a) **Treatment.** After payment in full of Allowed Administrative Expense

Claims and Allowed Class 1 Claims, the holders of Allowed General Unsecured Claims (including Allowed Unsecured Deficiency Claims) shall receive a *pro rata* share of the Plan Assets.

(b) **Impairment.** Class 2 Claims are Impaired**.** Therefore, the Class 2 Claimants will have the right to vote to accept or reject the Plan. If the holder of any Class 2 Claim fails to submit a timely ballot with respect to its Class 2 Claim, that holder will be deemed to have accepted the Plan.

3. **Class 3: Allowed Interests.**

(a) **Treatment.** The holders of Allowed Interests in the Debtor shall retain such Interests in the Debtor. After payment in full of Allowed Administrative Expense Claims, Allowed Class 1 Claims and Allowed Class 2 Claims, the holders of Allowed Interests shall receive the balance, if any, of the Plan Assets.

(b) **Impairment.** Class 3 Claims are Impaired**.** Therefore, the holders of Class 3 Claims will have the right to vote to accept or reject the Plan. If the holder of any Class 3 Claim fails to submit a timely ballot with respect to its Class 3 Claims, that holder will be deemed to have accepted the Plan.

ARTICLE VI
IMPLEMENTATION OF THE PLAN

6.1 <u>Management of the Debtor after Confirmation</u>. The Post-Confirmation manager of the Debtor and Reorganized Debtor shall be Susan Hoffman who shall not be compensated for her services as manager. Mrs. Hoffman shall be responsible on behalf of the Debtor or Reorganized Debtor to file all requisite tax returns due by the Debtor for periods on or before the Effective Date. Mrs. Hoffman shall be authorized to investigate, direct and compromise all retained Causes of Action. The proceeds of such retained Causes of Action constitute Plan Assets and shall be disbursed in accordance with the Plan.

6.2 <u>Implementation</u>. The Debtor or Reorganized Debtor will be authorized to take all necessary steps and perform all necessary acts to consummate the terms and conditions of this Plan. The Bankruptcy Court may direct the Debtor and any other necessary party to execute or deliver or to join the execution or delivery of any instrument required to effectuate the Plan, and to perform any other act necessary to consummate the Plan.

6.3 <u>Intentionally Omitted</u>.

6.4 <u>Bridge Financing</u>. Debtor has secured bridge financing pursuant to a loan and security agreement attached as Exhibit A to the Plan in the amount of $3,375,000. Should the Bankruptcy Court approve the Bridge Financing, Debtor will advance $2,750,000 to AMAG to the extent that at least that amount is due to AMAG after judgment by the Bankruptcy Court in the Adversary Proceeding. The balance of the Bridge Financing will be reserved for costs and expenses of the Bridge Financing.

6.5 <u>Real Estate Financing.</u> The Debtor or Reorganized Debtor will engage, with approval of the Court, one or more agents to:

(a) list for sale and sell, at a strike price of no less than $2,500,000, 912 Unit C on or before expiration of the term of the Bridge Financing;

(b) obtain a conventional mortgage on 900 Royal at no more than $1,500,000 on terms to be approved by the Manager and the Court on or before the Effective Date; and

(c) sell at a price of $150,000 906 Unit E to RSB on the Effective Date.

6.6 <u>Conditions Precedent to Effectiveness of the Plan</u>. The Effective Date will occur fourteen (14) days after the Confirmation Order becomes a Final Order.

ARTICLE VII
PROVISIONS REGARDING VOTING

16

7.1     Voting of Claims and Interests.  Each Holder of an Allowed Claim or Interest in an Impaired Class will be entitled to vote separately to accept or to reject the Plan.  For avoidance of doubt, any holder of a Claim or Interest which is subject to an objection pending as of the Ballot Deadline is not entitled to vote to accept or reject the Plan and any Ballot submitted on account of such a Claim will not be counted unless an order is entered by the Bankruptcy Court overruling the objection or allowing the Claim for voting purposes.

7.2     Confirmability of Plan.   The confirmation requirements of Section 1129 of the Bankruptcy Code must be satisfied with respect to the Debtor and the Plan.  If the Bankruptcy Court determines that any provisions of the Plan are prohibited by the Bankruptcy Code, or render the Plan unconfirmable under Section 1129 of the Bankruptcy Code, the Debtor reserves the right in its sole discretion to modify the Plan or to sever such provisions from the Plan, and to request that the Court confirm the Plan as Modified.

7.3     Nonconsensual Confirmation.    In the event that any Classes reject the Plan, the Debtor requests that the Bankruptcy Court confirm the Plan over any such rejection in accordance with Section 1129(b) of the Bankruptcy Code.

ARTICLE VIII
EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     Assumption and Assignment Generally.  On the Effective Date, except for an Executory Contract that has been previously assumed and assigned or rejected by an order of the Bankruptcy Court, each Executory Contract entered into by a Debtor prior to the Filing Date that has not previously expired or terminated pursuant to its own terms will be rejected.  Each contract and lease rejected pursuant to this Section will be rejected only to the extent that any such contract or lease constitutes an Executory Contract.   The

Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

All Real Property Leases will be assumed by the Plan. No cure amounts are owed.

8.2 <u>Executory Contracts To Be Rejected</u>. On the Effective Date, except for an Executory Contract that has been previously assumed and assigned or rejected by an order of the Bankruptcy Court, each Executory Contract entered into by a Debtor prior to the Filing Date that has not previously expired or terminated pursuant to its own terms will be rejected, pursuant to section 365 of the Bankruptcy Code. Each contract rejected pursuant to this Section will be rejected only to the extent that any such contract constitutes an Executory Contract. The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

8.3 <u>Bar Date for Rejection Damages</u>. If the rejection of an Executory Contract rejected pursuant to this Plan gives rise to a claim by the other party or parties to such contract or lease, such Claim will be forever barred and will not be enforceable against the Debtor unless a proof of Claim is Filed and served on the Debtor, no later than twenty-one (21) days after the Confirmation Date.

## ARTICLE IX
## <u>VESTING OF PROPERTY, DISCHARGE, INJUNCTION AND RELEASES</u>

9.1 <u>Vesting to the Reorganized Debtor</u>. Except as otherwise provided in the Plan and Confirmation Order, the Plan Assets will be transferred to the Reorganized Debtor upon the Effective Date, free and clear of all liens, Claims and Interests.

9.2 <u>Discharge</u>. On the Plan Effective Date, pursuant to Bankruptcy Code section

1141(d), and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan will be in complete satisfaction, discharge, and release of all Claims arising on or before the Plan Effective Date, including, but not limited to, any interest accrued on Claims from and after the Petition Date. Except as provided in the Plan or Confirmation Order, as of the Plan Effective Date, Confirmation of the Plan will discharge the Debtor from all Claims or other debts that arose on or before the Plan Effective Date, and all debts of the kind specified in Bankruptcy Code section 502(g), 502(h) or 502(i), whether or not (a) a Proof of Claim based on such debt is filed or deemed filed pursuant to Bankruptcy Code section 501, (b) a Claim based on such debt is allowed pursuant to Bankruptcy Code section 502, or (c) the holder of a Claim based on such debt voted to accept the Plan or objected to the Plan.

9.3    Stays.    All injunctions, liens or stays provided for in the Reorganization Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on or immediately before the Confirmation Date will remain in full force and effect until the Effective Date.

9.4    Injunction.    On the Effective Date, or the Confirmation Order, all entities who have held, hold or may hold Claims against or Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (a) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor for or on account of any such Claim or Interest, (b) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or Reorganized Debtor for or on account of any such Claim or Interest, and (c) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or Reorganized Debtor for or against the property or interests in property of the Debtor or Reorganized Debtor on account of any such Claim or Interest.

9.5     Intentionally Omitted.

9.6     Exculpation.  From and after the Plan Effective Date, the Debtor, the Reorganized Debtor, together with their respective current and former attorneys, professionals, accountants, investment bankers, consultants and other representatives of the foregoing, shall neither have nor incur any liability to, or be subject to any right of action by, any holder of a Claim or Equity Interest, or any other party in interest, who (I) accepts a distribution under this Plan, (II) votes to accept or is deemed to accept this Plan, or (III) does not timely submit its ballot voting on this Plan, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, formulating, negotiating or implementing the Plan, the solicitation of acceptances of the Plan, the pursuit of approval of the Disclosure Statement, the Confirmation, the Plan Supplements, the consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan.

ARTICLE X
RESERVATION OF CLAIMS

Except as otherwise provided in the Plan, all retained Causes of Action, including those described in the Debtor's schedules and all exhibits thereto, and the Debtor's Disclosure Statement, are reserved and may be prosecuted after the Confirmation Date by the Reorganized Debtor. On and after the Effective Date, Susan Hoffman on behalf of the Reorganized Debtor, will have the authority to pursue such claims, compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Causes of Action.

**Without limiting the foregoing, the following Causes of Action are expressly reserved and shall be pursued by the Debtor:**

a.      All Causes of Action against AMAG, Inc., including all claims included in

20

the adversary proceeding number 19-01133 pending before the Bankruptcy Court.

### ARTICLE XI
### OBJECTIONS TO CLAIMS AND TREATMENT OF
### DISPUTED AND CONTINGENT CLAIMS

11.1 <u>Objections to Claims</u>. The Reorganized Debtor will have full right, power and authority to investigate and if necessary, object to any Claim on or before sixty (60) days after the Effective Date unless the Bankruptcy Court extends such time on notice for cause shown. Except to the extent specifically provided in the Plan or the Confirmation Order, the confirmation of the Plan, the voting of any Claim to accept or reject the Plan, or the agreement of the Debtor to not object to any Claim, shall have no effect on the right, power, and authority of the Reorganized Debtor to object to any Claim against the Debtor.

**Without limiting the foregoing, Debtor or Reorganized Debtor intends to object to or has already objected to the following claims:**

  a.  Claim No. 1 filed by Arrowhead Capital Finance.

  b.  Claim No. 2 filed by AMAG, Inc.

  c.  Any secured claims asserted by the United States of America.

11.2 <u>Payments and Distributions on Disputed Claims</u>. Notwithstanding any provision in the Plan to the contrary, no payments or distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Notwithstanding the foregoing, any Person who holds both an allowed Claim(s) and a Disputed Claim(s) will receive the appropriate payment or distribution on the allowed Claim(s), although no payment or distribution will be made on the Disputed Claim(s) until such dispute is resolved by settlement or Final Order.

11.3 <u>Disputed Claim Reserve</u>. At the time of any distribution to Creditors, there shall be reserved by the Reorganized Debtor, the amount of cash which would otherwise be distributed

in respect of Disputed Claims as if the full amount of each such Disputed Claim were deemed an allowed Claim. Upon any such Disputed Claim becoming an allowed Claim in whole or in part, the amount of cash then due to the Creditor in respect of such allowed Claim shall be distributed to such Creditor. The distributions to the holder of such allowed Claim shall be made as soon as practicable after the order of judgment allowing such Claim becomes a Final Order.

## ARTICLE XII
## DEFAULT UNDER THE PLAN

Upon a default of a payment due under the Plan, the administrative collection powers and rights of the U.S. Department of the Treasury, Internal Revenue Service will be reinstated as they existed prior to the bankruptcy, including but not limited to, the assessment of taxes, the filing of a Notice of Federal Tax Lien and the powers of levy, seizure, and sale under the Internal Revenue Code. Nothing contained herein shall impair the administrative collection powers and rights of the U.S. Department of the Treasury, Internal Revenue Service for a payment due outside of the Plan payments.

## ARTICLE XIII
## MODIFICATION OF THE PLAN

The Debtor reserves its right, according to the Bankruptcy Code, to amend or modify the Plan before the Confirmation Date. After the Confirmation Date, the Debtor may, upon order of the Bankruptcy Court, and according to Section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intentions of the Plan.

A claimant that has accepted or rejected the Plan will be deemed to have either accepted or rejected, as the case may be, any modifications to the Plan, even if they are made after the solicitation of votes of acceptance or rejection of the Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court.

## ARTICLE XIV
## <u>RETENTION OF JURISDICTION</u>

The Bankruptcy Court will retain exclusive jurisdiction of all matters arising out of the Reorganization Case and the Plan as long as necessary for the purposes of Sections 105(a), 1127, 1142(b) and 1144 of the Bankruptcy Code and for, *inter alia,* the following purposes:

(a)      to recover all Plan Assets of the Debtor, wherever located;

(b)      to decide any objections to the allowance, disallowance, or subordination of Claims or a controversy as to the classification of Claims;

(c)      to decide and fix (i) all Administrative Claims, (ii) Claims arising from the rejection of any executory contracts or unexpired leases, (iii) Liens on any property or any proceeds thereof, and (iv) any other fee and expense authorized to be paid or reimbursed under the Bankruptcy Code;

(d)      to liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any disputed, contingent or unliquidated Claims;

(e)      to adjudicate any matters as may be provided for in the Confirmation Order; to effectuate payments under and enforce the provisions of the Plan;

(f)      hear and determine any pending applications, adversary proceedings or contested matters including all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan, and matters concerning state, local and federal taxes according to Sections 346, 505 and 1146 of the Bankruptcy Code;

(g)      to hear and determine all issues relating to the Plan;

(h)      to amend or to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(i)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

(j)      to consider any modification of the Plan pursuant to Section 1127 of the Bankruptcy Code or modification of the Plan after substantial consummation, as such terms are defined in Section 1101(2) of the Bankruptcy Code;

(k)      to determine any causes of action;

(l)      to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(m)      to enter a final decree closing the Reorganization Case.

ARTICLE XV
GENERAL PROVISIONS

15.1   <u>Notices</u>.  Except as otherwise specified, all notices and requests will be given by any written means, including but not limited to, telex, telecopy, telegram, first class mail, express mail or similar overnight delivery service and hand delivered letters, and any such notice or request will be deemed to have been given when received.  Notices will be delivered as follows:

To the Debtor:       Susan Hoffman
                     900 Royal Street
                     New Orleans, LA 70116

                     and

                     Leo D. Congeni
                     Congeni Law Firm, LLC
                     650 Poydras Street, Suite 2750
                     New Orleans, LA 70130

To the Office of the U.S. Trustee, Eastern District of Louisiana:

24

Office of the United States Trustee
Suite 2110, Texaco Center
400 Poydras Street
New Orleans, Louisiana  70130

15.2    Extension of Payment Dates.  If any distribution date falls due on any day that is not a Business Day, then such payment date will be extended to the next Business Day.

15.3    Confirmation by Non-Acceptance Method.  The Debtor requests confirmation of the Plan pursuant to Bankruptcy Code Section 1129(b) with respect to any Impaired Class that does not vote to accept the Plan.

15.4    Withdrawal of Plan.  The Plan may be withdrawn or revoked before the entry of the Confirmation Order at the sole and absolute discretion of the Debtor.

15.5    Payment of Statutory Fees.  United States Trustee's fees do not require allowance by the Court as both pre-confirmation and post-confirmation fees are payable pursuant to Section 1930 of Title 28 of the United States Code. Such fees will be paid in cash and in full pursuant to the applicable provisions of the Bankruptcy Code and other statutory provisions by the Reorganized Debtor.  Moreover, the Debtor and, after the Effective Date, the Reorganized Debtor shall comply with all disbursement and other reporting requirements imposed by the Office of the United States Trustee for the period up to the date an order is entered either granting final decree, converting the case to Chapter 7 or dismissing the Reorganization Case.

15.6    Payment of Post-Confirmation Fees and Expenses of Professionals for the Reorganized Debtor.  From and after the Confirmation Date, and with Bankruptcy Court approval prior to any payment, the Reorganized Debtor shall pay the reasonable fees and expenses of professional persons thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

15.7    <u>Preparation and Filing of Tax Returns.</u> On or before the Effective Date (or by such other date as the Bankruptcy Court may provide), the Debtor will file all state and federal tax returns, including any return due for any "stub period" and any expenses for preparation and filing of such returns will be paid as an Administrative Expense of the Debtor's estate.

15.8    <u>Exemption from Transfer Taxes</u>. Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, of equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any agreement or assignment executed in connection with any of the transactions contemplated under the Plan will not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

15.9    <u>Binding Effect</u>.    On the Effective Date, according to Section 1141 of the Bankruptcy Code, the provisions of this Plan will bind the Debtor, any holder of a Claim or Interest, whether or not the Claim or Interest is Impaired under the Plan and whether or not the Holder of the Claim or Interest has accepted the Plan.

15.10    <u>Severability</u>.    Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any claim or transaction, the Debtor or, after the Effective Date, the Reorganized Debtor, may modify the Plan **in Accordance with Article XIII of the Plan** so that such provision shall not be applicable to the Holder of any Claim. Such a determination of unenforceability shall not (1) limit or affect the enforceability and operative effect of any other provision of the Plan or (2) require the resolicitation of any acceptance or rejection of the Plan.

[REMAINDER OF PAGE INTENTIONAL LEFT BLANK]

Dated:  <u>February 5, 2020</u>

*/s/ Susan Hoffman*

_____

Royal Alice Properties, LLC
BY:  Susan Hoffman, Managing Member