## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-12337 |
| | § | |
| ROYAL ALICE PROPERTIES, LLC | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | SECTION "A" |

## MEMORANDUM OPINION AND ORDER

This Court held a two-day evidentiary hearing beginning on September 24, 2021, and concluding on September 27, 2021, to resolve the following matters:

(i) *Motion To Approve (I) Settlement under FRBP 9019; and (II) Sale of Real Property Pursuant to 11 U.S.C. § 363 As Part of Settlement* (the "Settlement/Sale Motion"), [ECF Doc. 418], as amended, [ECF Doc. 423]; and the *Motion for Entry of Order (I) Establishing Bidding Procedures; (II) Scheduling the Auction for the Sale of Debtor's Real Property Assets; and (III) Granting Related Relief* (the "Bid Procedures Motion"), [ECF Doc. 419], filed by the chapter 11 Trustee; the Oppositions thereto, [ECF Docs. 463, 471 & 472]; and related Replies, [ECF Docs. 503 & 504];[1]

(ii) *Motion of Party-in-Interest Arrowhead Capital Finance, LTD. Objecting to Computation of Interest, Legal Fees and Costs Payable to AMAG, INC*., [ECF Doc. 429], filed by Arrowhead Capital Finance; the related Oppositions, [ECF Docs. 465 & 467], and Arrowhead's Reply, [ECF Doc. 494];[2]

---

[1]     On September 20, 2021, the Trustee filed a motion to disqualify counsel for Susan Hoffman, sole equity holder of the Debtor, and to strike the opposition to the Settlement/Sale Motion filed by counsel on her behalf. [ECF Doc. 474]. The Trustee asserted that counsel had acted unethically in representing Hoffman's personal insider interests after he had represented the Debtor for the year prior to the Trustee's appointment when the Trustee, as the representative of the estate, had not waived the conflict of interest. *Id*. On September 21, 2021, after an expedited hearing, this Court granted the Trustee's motion in part, accepting the withdrawal of Hoffman's counsel, but continued the portion of the Trustee's motion requesting sanctions. [ECF Doc. 487]. In balancing the equities, the Court declined to strike Hoffman's opposition to the Trustee's Settlement/Sale Motion due to her lawyer's ethical issues. *Id*. Hoffman appeared pro se at the evidentiary hearing on the Settlement/Sale Motion and related motions.

[2]     On September 23, 2021, the day before the trial of the Settlement/Sale Motion and related motions began, this Court issued an Order in a related adversary initiated against the Debtor by Arrowhead Capital Finance, LTD. ("Arrowhead"), granting the Trustee's motion for summary judgment, dismissing the remaining claims alleged by Arrowhead against the Debtor, and sustaining the objection filed by the Debtor to Arrowhead's proof of claim. [Adv. No. 20-1022, ECF Doc. 198]. That Order effectively removed Arrowhead's status in this case as a party in interest under 11 U.S.C. § 1109(b), but, in balancing the equities—recognizing that the appeals period had only just begun to run and the Court had already reviewed the pleadings filed by Arrowhead related to the instant motions—this Court allowed Arrowhead to

(iii)   *Motion for Adequate Protection Pursuant to Section 363(e), and Motion To Require the Debtor To Assume or Reject Leases with Incorporated Memorandum*, filed by Royal Street Bistro, LLC and PicturePro, LLC, [ECF Doc. 455]; the Oppositions, [ECF Docs. 461 & 466], and the Reply, [ECF Doc. 512];

(iv)   *Motion for Application for Compensation for Services Rendered and Reimbursement of Expenses in Accordance with Bankruptcy Rules 2016 and 9013, Local Rules 2016-1 and 9013-1 and U.S.C 11 § 506(b) in Accordance with the Amended Motion to Approve (I) Settlement under FRBP 9019, and (II) Sale of Real Property pursuant to 11 U.S.C. § 363 AS PART OF SETTLEMENT, [DOC. 423]*, [ECF Doc. 478], and *Application for Approval of an Award of Secured Interest Pursuant to 11 U.S.C. § 506(b) in Accordance with the Amended Motion to Approve (I) Settlement under FRBP 9019, and (II) Sale of Real Property pursuant to 11 U.S.C. § 363 AS PART OF SETTLEMENT, [DOC. 423]*, [ECF Doc. 479], both filed by AMAG, Inc.; and the related Oppositions, [ECF Docs. 496 & 498]; and

(v)   the following post-trial briefs:

    a.   *Post-trial Brief Filed by Royal Street Bistro, LLC and PicturePro LLC in Accordance with Order*, [ECF Doc. 528];

    b.   *Intervenor Susan Hoffman's Memorandum (A) in Support of Proposed Plan of Reorganization and (B) in Supplemental Opposition to Trustee's Amended Motion To Approve (I) Settlement Under FRBP 9019 and (II) Sale of Real Property Pursuant to Settlement*, [ECF Doc. 529];[3]

    c.   *Reply Memorandum*, filed on behalf of the chapter 11 Trustee, [ECF Doc. 543].

The parties stipulated to the admission of Joint Exhibits 1–5, 7–16, and 18 as evidence, with Exhibits 11–16 being admitted under seal.  Appearances of counsel and testifying witnesses are listed in this Court's Order of September 30, 2021.  [ECF Doc. 522].  At the close of evidence, the Court took the matters under submission, and now issues the following findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7052.

---

participate in the evidentiary hearing on the instant matters on a limited basis over the objection of the Trustee.  *See* Hr'g Tr. 1-21:18 to 1-27:17.  The Court notes that no request for a stay of these proceedings pending appeal was filed.

[3]   On November 1, 2021, this Court entered an Order granting the Trustee's motion to strike portions of Susan Hoffman's post-trial brief and finding that portions of her post-trial brief exceeded the scope of the legal briefing allowed by the Court in its September 30, 2021 Order.  [ECF Doc. 570].

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(A), (B), (M) & (O). The venue of the Debtor's chapter 11 case is proper under 28 U.S.C. §§ 1408 and 1409(a).

## FINDINGS OF FACT[4]

### A.        The Trustee's Settlement/Sale Motion and Related Bid Procedures Motion

A full description of this Debtor's prepetition business dealings as a holding company for three income-producing immovable properties (the "Properties"), its bankruptcy filing on August 29, 2019, its post-petition litigation with secured creditor AMAG, Inc. ("AMAG"), and the chain of events leading to the appointment of Dwayne Murray to serve as the Chapter 11 Trustee (the "Trustee") may be found in this Court's Order of September 4, 2020. [ECF Doc. 308].

At this time, the Trustee's Settlement/Sale Motion asks this Court pursuant to Bankruptcy Rule 9019 and § 363 of the Bankruptcy Code to allow the Trustee (i) to settle the secured claim that AMAG holds as a result of its lien on all of the Debtor's Properties and rents and (ii) to sell those Properties free and clear of all interests. *See* Settlement/Sale Motion, ¶¶ 9–10. The proposed settlement envisions that AMAG's secured claim against the estate will be determined and allowed in the total amount of $6,004,961.46 (plus interest and costs accruing after June 30, 2021) (the "AMAG Settlement Amount"). *See id.* ¶ 10.[5] The settlement would allow the estate to receive

---

[4]        These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy 9014 and 7052. To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

[5]        That amount contemplates a principal balance of $3,137,058.62, accrued interest of $2,507,672.27, and attorneys' fees and costs of $360,230.57. *See* Settlement/Sale Motion, ¶ 10. The proof of claim filed by AMAG against the estate asserts a prepetition secured claim in the principal amount of $3,137,058.62,

the Properties free and clear of AMAG's secured liens and sell them at a private auction, selling each of the three Properties separately or as a package within forty-five days after Court approval of the Settlement/Sale Motion and the Bid Procedures Motion. *See id.*

The proposed settlement would allow the estate to recoup from the first cash sale proceeds up to $25,000 paid by the Trustee for marketing expenses (the "Marketing Expense Limit") and would allow the estate to receive an amount equal to 1.25% of the Aggregate Credit-Bid Amount (defined below) regardless of the buyer or the purchase price amount (the "Estate Commission"). *See id.* In return for settling its claim, AMAG agrees

(i)     to serve as a stalking-horse bidder earning no break-up fee, with the ability to credit-bid an opening bid for the Properties in the aggregate amount of $5,015,000 ("Aggregate Credit-Bid Amount") and to offer a financing opportunity to other bidders as well;

(ii)    to pay $50,000 to the Trustee for the benefit of the estate upon Court approval of the Bid Procedures Motion (the "Settlement Payment");

(iii)   to split any amount received over and above the Aggregate Credit-Bid Amount 80% to AMAG and 20% to the estate until AMAG has received full payment of the AMAG Settlement Amount—even if AMAG itself is the successful bidder above the Aggregate Credit Bid Amount on any individual Property or if AMAG is the buyer of all of the Properties (the "Overbid Split"); and

(iv)    to carve out from the collateral securing its secured lien the aggregate of the Marketing Expense Limit, the Settlement Payment, the Estate Commission, the payment of the Overbid Split, any cash on hand at the time of the closing of the sale, any accounts receivable (other than from the sale), and claims against third parties (the "Carve-Out Property") to enable the Trustee to pay allowed administrative expense claims.

*See id.*; *see also* Bid Procedures Motion, ¶ 8. As part of the settlement, AMAG also agrees to subordinate its claim to allow administrative expense claims up to the value of the Carve-Out Property, except that, in the event the Carve-Out Property is insufficient to pay allowed

---

accrued interest of $1,469,606.66, and attorneys' fees and costs of $16,952.98, for a total prepetition secured claim of $4,623,618.26, exclusive of post-petition interest, fees, and costs allowable under 11 U.S.C. § 506(b). *See* Proof of Claim No. 2.

administrative expense claims, AMAG shall pay to the Trustee for the benefit of the estate one-half of the shortfall, up to $100,000. *See* Settlement/Sale Motion, ¶ 10. The proposed settlement further contemplated that Court Orders approving the Sale Motion and the Bid Procedures Motion would be effective upon entry and that the settlement would not affect AMAG's rights against third parties under its loan documents and applicable law. *See id*. ¶ 10.[6] And the proposed settlement provides that "all liens, claims, and interests in and to the Real Properties will attach to the proceeds with the same validity, extent, and priority that otherwise exists." *See id*. ¶ 41.

### B.    The Trustee's Testimony

The Trustee testified in support of the Settlement/Sale Motion and Bid Procedures Motion. The Trustee has practiced law for over 28 years, has taught bankruptcy courses in a regional law school, and has over 20 years of experience as a trustee in chapter 7, subchapter V, and traditional chapter 11 cases. *See* Hr'g Tr. 1-84:21 to 1-86:20. The Court finds the Trustee to be an earnest, well qualified, and trustworthy witness and affords much credibility to his testimony.

The Trustee reported that, since he was appointed by the United States Trustee's Office in September 2020 to serve as the Trustee in this case, neither Susan Hoffman, the sole equity holder

---

[6]    The Settlement/Sale Motion also conditions the AMAG settlement upon the dismissal of the appeal of this Court's Memorandum Opinion and Order and the Judgment of November 25, 2020, [Adv. No. 19-1133, ECF Docs. 113 & 114], that, at the time of the filing of the Settlement/Sale Motion, was pending in the United States District Court for the Eastern District of Louisiana (the "District Court"), [No. 20-3346]. On September 7, 2021, the District Court issued its Order and Reasons granting AMAG's motion to dismiss the appeal lodged by Susan Hoffman, holding that Hoffman had no standing to pursue the appeal on behalf of the estate and denying Hoffman's motion to intervene in the appeal in her capacity as the Debtor's sole equity holder. [No. 20-3346, ECF Doc. 36]. On September 20, 2021, Hoffman filed a motion requesting the District Court reconsider its Order and Reasons.

To be clear, the Trustee, as the sole representative of the estate, has never pursued the appeal, but Hoffman's filings have prolonged final resolution of AMAG's claim against the estate. Indeed, even though the District Court has held that Hoffman has no standing to appeal on behalf of the estate and has denied intervention, Hoffman filed a motion for reconsideration of the District Court's decision and makes clear in her opposition to the Trustee's Settlement/Sale Motion that "[s]hould the EDLA not reconsider the 9/7 Order, **Debtor and Mrs. Hoffman will appeal** the 9/7 Order to the Fifth Circuit for the reasons set forth in the [motion for reconsideration]." [ECF Doc. 473, at 3 (emphasis added)].

of the Debtor, nor Peter Hoffman, her husband and, at times, designated representative of the estate, has presented him with feasible refinancing options for the AMAG debt owed by the Debtor. *See* Hr'g Tr. 1-91:6 to 1-94:22. The sole income of the Debtor comes from rent collected under recorded leases (the "Leases"). *See* Exs. 1, 3 & 5. Royal Street Bistro, LLC ("RSB"), owned by the Hoffman Family Trust, leases the first floor of 900-902 Royal Street as well as 910-912 Royal Street to operate two restaurants, *Petite Amelie* and *Café Amelie*, which Susan Hoffman manages. *See* Hr'g Tr. 6:1–7:22. PicturePro LLC ("PicturePro" and, together with RSB, the "Lessees"), of which Peter Hoffman is a member manager, leases the second, third, and fourth floors of 900-902 Royal Street; Susan Hoffman lives in that space and Peter Hoffman testified that he conducts business on behalf of PicturePro in that space. *See* Hr'g Tr. 6:1–7; 51:6–52:20. The Trustee confirmed that neither of the Lessees of the Properties pay rent on time without prodding from the Trustee and that PicturePro remains in default under the terms of its Lease, owing the estate approximately $55,000 in back rent. *See* Hr'g Tr. 1-86:23 to 1-88:3; 1-118:24 to 1-120:8; 1-131:17 to 1-133:12.

The Trustee presented evidence under seal regarding the valuation of the Properties. *See* Hr'g Tr. 1-99:24 to 1-107:20 & Exs. 11–16 (filed under seal). ███████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████



The Trustee relied on those appraisals and proposed listing agreements to negotiate the AMAG settlement and craft bid procedures to attempt to obtain the highest and best price for the estate in the sale of the Properties. It is the Trustee's view that selling the Properties individually will foster competition at auction to obtain the highest and best price for the estate, but the Trustee reserves the right to sell the Properties as a set if the proposed sale price exceeds the aggregate amount that can be obtained for the individual Properties. *See* Hr'g Tr. 1-109:23 to 1-110:19. Further, it is the position of the Trustee that the Properties are significantly more valuable to a prospective purchaser if they are sold unencumbered by the current, below-market, 20-year Leases of insider-owned affiliates. *See* Hr'g Tr. 1-121:7–25; 1-123:10–20. The Trustee testified that, in his business judgment, if a buyer were to purchase the Properties with the requirement to assume the current Leases, then the Leases should come with personal guarantees, and the current Leases have no such guarantees attached. *See* Hr'g Tr. 1-107:21 to 1-109:1. Indeed, the PicturePro Lease is particularly onerous, as it prohibits any buyer from using the residential floors of the building. *See* Hr'g Tr. 1-121:7–25. Moreover, the Trustee is of the mind that, although the Leases are income-producing, the current Leases will service debt only up to $4 million, which limits the potential purchase price of the Properties. *See* Hr'g Tr. 1-122:1 to 1-123:20. The Trustee observed that Lessees RSB and PicturePro are free to renegotiate their Leases with any buyer of the Properties. *See* Hr'g Tr. 1-123:21 to 1-125:3.

The Trustee proposes that he will rely on his network through the National Association of Bankruptcy Trustees and his own 28 years of experience marketing and selling assets as a trustee

to market the Properties nationally, regionally, and locally, to save the estate a broker's fee. *See* Hr'g Tr. 1-112:24 to 1-115:5. The Trustee also noted that he has received multiple indications of third-party interest in the Properties since he was appointed in this case, particularly after he filed the instant motions before the Court. *See* Hr'g Tr. 1-115:16 to 1-117:12.

The Trustee testified that the settlement with AMAG and the sale of the Properties are in the best interest of the estate, as the deal contemplates that AMAG will, among other things, (1) release its secured claim on $300,000 in cash collateral and a $55,000 account receivable in favor of the estate; (2) allow from the sale proceeds up to $100,000 to pay administrative costs and $25,000 to be applied toward marketing; and (3) allow the estate to recover 1.4% of the purchase price, plus 20% of any winning bid above the Aggregate Credit-Bid Amount. *See* Hr'g Tr. 1-125:10–23; 1-149:4 to 1-150:7. On cross-examination, the Trustee confirmed that he had not offered RSB or PicturePro adequate protection, as he believes the Leases are avoidable under applicable provisions of the Bankruptcy Code. *See* Hr'g Tr. 1-136:20 to 1-139:12.[8]

### C. AMAG's § 506(b) Motions

AMAG's Proof of Claim filed December 2, 2019, asserts a prepetition claim of $4,623,618.26, inclusive of $3,137,058.62 in principal balance, as well as $1,469,606.66 in interest and $16,952.98 in attorneys' fees and costs provided for under the pertinent loan documents between AMAG and the Debtor. *See* Ex. 7. Early in the case, the Debtor initiated an adversary proceeding challenging the validity, extent, and amount of AMAG's secured claim, including AMAG's assessment of default-rate interest. In November 2020, this Court granted summary

---

[8]    On September 13, 2021, the Trustee filed a *Complaint To Avoid Leasehold Interests of Alleged Lessee* against PicturePro. [Adv. No. 21-1033, ECF Doc. 1]. The Complaint seeks (i) to avoid the recordation of the PicturePro Lease as a preference under 11 U.S.C. § 547(b) and (ii) to avoid the effect of an unrecorded lease on estate property under 11 U.S.C. §§ 544(a)(1) and (3), among other claims. *See id.*

judgment in AMAG's favor, finding as part of that ruling that the interest and default interest charged to the Debtor pursuant to the relevant loan documents were not usurious under Louisiana law.  [Adv. No. 19-1133, ECF Doc. 113].  The Court entered a Judgment dismissing the Debtor's adversary proceeding against AMAG in its entirety.  [Adv. No. 19-1133, ECF Doc. 114].  No party with standing appealed that Judgment, *see supra* note 6, and no other party in interest has objected to AMAG's Proof of Claim; thus, at this time, it is deemed allowed pursuant to 11 U.S.C § 502(a).

AMAG has filed two motions pursuant to 11 U.S.C. § 506(b) in tandem with the Trustee's Settlement/Sale Motion, one requesting approval of post-petition attorneys' fees and the other requesting post-petition interest (together, the "§ 506(b) Motions").  [ECF Docs. 478 & 479].  In support of the § 506(b) Motions, AMAG submitted four declaration made under penalty of perjury: (1) *Declaration of John F. Kurtz, Jr.*, counsel for AMAG ("Kurtz Decl."), [ECF Doc. 478-1]; (2) *Declaration of Richard W. Martinez*, local counsel for AMAG ("Martinez Decl."), [ECF Doc. 478-11]; and (3) two declarations executed by Robert Frcek, AMAG's Chief Financial Officer, both dated August 24, 2021 ("Frcek Decls."), [ECF Docs. 478-5 & 479-1].  Attached to the Kurtz Decl. are invoices for prepetition legal services rendered in connection with enforcing AMAG's secured lien on the Debtor's Properties, *see* Kurtz Decl., Ex. A, as well as invoices for similar services rendered post-petition through August 31, 2021, *see* Kurtz Decl., Exs. B & C.  Attached to the Martinez Decl. are invoices for legal services rendered post-petition in connection with enforcing AMAG's secured lien on the Debtor's Properties.  *See* Martinez Decl., Ex. B.  According to the Kurtz Decl. and the Martinez Decl., AMAG has incurred post-petition legal expenses and costs

associated with enforcing its secured lien on the Debtor's Properties in the amount of $348,295.40.[9]

In support of its request for post-petition interest, the Frcek Decls. attach the relevant loan documents evidencing the debt owed by the Debtor to AMAG, as well as evidence that AMAG began charging the Debtor interest at the 18% default rate beginning on February 28, 2014. *See* Frcek Decls., Exs. 1–5.

### D. The Tenants' Motion

As discussed, RSB and PicturePro lease two of the Debtor's three Properties. In addition to filing an objection to the Settlement/Sale Motion, the Lessees filed a motion (i) seeking adequate protection under 11 U.S.C. § 363(e) and (ii) compelling the Trustee to affirmatively assume or reject the Leases. Susan Hoffman, testifying on behalf of RSB, opined that the restaurants were profitable due to the setting of the restaurants, particularly the availability of outdoor courtyard seating, but presented no financial data to support her opinion. *See* Hr'g Tr. 25:10–34:13. She also testified that she did not believe moving the restaurants to another location would be feasible, as the restaurants depend on the Properties' particular atmosphere. *See id.* On cross-examination, Hoffman admitted that, despite the profitability of the restaurants, the Debtor had not made a mortgage payment to AMAG since "2019 or 2018" when she sold a nearby property located at 910 Royal Street. *See* Hr'g Tr. 42:20–43:5.

Peter Hoffman, testifying on behalf of PicturePro, stated that PicturePro leases one of the Properties to house film producers and financiers, opining that if the Properties are sold, PicturePro's business in Louisiana would cease. *See* Hr'g Tr. 59:7–61:7. Mr. Hoffman also

---

[9]     That figure includes $220,033.00 in fees and $376.86 in costs for services from the law firm of Kurtz Law PLLC and $125,175.00 in fees and $2,710.54 in costs for services from the law firm of Richard A. Martinez, APLC. *See* Kurtz Decl., Exs. B & C; Martinez Decl., Ex. B.

observed that, if the Properties are sold, Susan Hoffman would also lose her residence, as PicturePro allows her to live in the Property.  *See* Hr'g Tr. 60:7–12.

## DISCUSSION

### A.  Standards for Approving Settlements Under Bankruptcy Rule 9019

"[C]ompromises are a normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 354 (5th Cir. 1997).  "[C]ourts are empowered to approve a compromise settlement of a debtor's claim under Bankruptcy Rule 9019(a) . . . if the settlement is fair and equitable and in the best interest of the estate." *Id.* at 355 (internal quotations and citations omitted).  "The words 'fair and equitable' are terms of art—they mean that senior interests are entitle to full priority over junior ones." *Id.* (citation omitted).  To evaluate whether a proposed settlement is fair and equitable and in the best interest of the estate,

> the judge must evaluate and set forth in a comprehensible fashion:  (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise.

*Id.* at 355–56; *see also In re Mirant Corp.*, 348 B.R. 725, 739 (Bankr. N.D. Tex. 2006).

As to the first factor, this Court is not required to conduct a "mini-trial" to determine the outcome of any claims waived in the proposed settlement; rather, "[t]he judge need only apprise [her]self of the relevant facts and law so that [she] can make an informed and intelligent decision." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d at 356 (citation omitted).  The Court's obligation is to "canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'"  *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 497 (Bankr. S.D.N.Y.

1991 (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).  And as to the third "catch-all provision," the Fifth Circuit instructs this Court to "consider the best interest of the creditors, with proper deference to their reasonable views."  *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d at 356.

### B.    Standards for Approving Proposed Sales of Property Outside the Ordinary Course Under 11 U.S.C. § 363

"The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  "In such circumstances, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."  *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) (internal quotations on citations omitted).  "The business judgment standard in section 363 is flexible and encourages discretion."  *Id*.  Indeed, "[g]reat judicial deference is given to the Trustee's exercise of business judgment."  *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005).  But "[w]hether the proffered business judgment is sufficient depends on the case."  *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986).  A bankruptcy judge

> should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.  He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisal of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.  This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*Id*. (quoting *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063,

1071 (2d Cir. 1983)).

Even if § 363(b)'s requirements are satisfied, the Trustee's proposed sale is still subject to

the requirements of § 363(c) through (f). *See* 11 U.S.C. § 363(d). Relevant here, § 363(e) requires

that

> at any time, on request of an entity that has an interest in properly used, sold, or
> leased, or proposed to be used, sold, or leased, by the trustee, the court, with or
> without a hearing, shall prohibit or condition such use, sale, or lease as is necessary
> to provide adequate protection of such interest.

11 U.S.C. § 363(e). "Adequate protection, as defined by 11 U.S.C. § 361, may be cash payments,

additional or replacement liens, or other such relief as to provide the indubitable equivalent of such

entity's interest in such property." *In re Continental Air Lines, Inc.*, 780 F.2d at 1226. Further,

under § 363(f), the Trustee may not sell the Properties free and clear of all interests in the Properties

unless

> (1)  applicable nonbankruptcy law permits sale of such property free and clear of
>       such interest;
>
> (2)  such entity consents;
>
> (3)  such interest is a lien and the price at which such property is to be sold is greater
>       than the aggregate value of all liens on such property;
>
> (4)  such interest is in bona fide dispute; or
>
> (5)  such entity could be compelled, in a legal or equitable proceedings, to accept
>       a money satisfaction or such interest.

11 U.S.C. § 363(f).

Importantly, "in any hearing under [§ 363]—(1) the trustee has the burden of proof on the

issue of adequate protection; and (2) the entity asserting an interest in property has the burden of

proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p).

14

C.  **Standards for Approving Post-Petition Interest and Reasonable Attorneys' Fees and Costs Under § 506(b)**

Section 506 of the Bankruptcy Code provides that "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement . . . ." 11 U.S.C. § 506(b). An award of post-petition interest is "to be paid only out of the 'security cushion.'" *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd*., 484 U.S. 365, 372 (1988). "[T]he interest allowed by § 506(b) will accrue until payment of the secured claim or until the effective dates of the plan." *Rake v. Wade*, 508 U.S. 464, 468 (1993). If a creditor is entitled to post-petition interest under § 506(b), "[s]uch interest becomes part of the creditor's allowed claim." *Key Bank of N.Y. v. Harko (In re Harko)*, 211 B.R. 116, 119 (2d Cir. B.A.P. 1997).

"[T]he value of a debtor's collateral and the amount of a creditor's claim are among the most important issues between the debtor and the secured claimholder." *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 797 (5th Cir. 1997). To determine whether a creditor is entitled to post-petition interest and reasonable fees under § 506(b), the Court must examine those two values. *See id*. But "[n]either Bankruptcy Code § 506(b) nor the Bankruptcy Rule define or establish the time for determining valuation of collateral for purposes of § 506(b)." *Id*. at 798. The Fifth Circuit, however, has instructed that the valuation of a secured creditor's collateral under § 506 of the Code is flexible and not limited to a single point in time. *See id*. "The creditor though bears the ultimate burden to prove by a preponderance of the evidence its entitlement to postpetition interest, that is, that its claim was oversecured, to what extent, and for what period of time." *Id*.

**D.    The Objections**

Objections to one or more of the current motions before the Court were lodged by Susan Hoffman, the sole member of the Debtor and resident of one of the Properties, as well as by Arrowhead and Lessees RSB and PicturePro.

*1.    The proposed sale of the Properties is not an impermissible sub rosa plan.*

Susan Hoffman asserts that the Trustee's proposed sale of the Properties is an impermissible "sub rosa" plan, that is, it would effectively resolve the entire bankruptcy case and deprive creditors of the procedural safeguards of the chapter 11 plan confirmation process.  [ECF Doc. 473, at 5].  It is well settled in this Circuit that "a debtor in Chapter 11 cannot use § 363 to sidestep the protection creditors have when it comes time to confirm a plan of reorganization."  *In re Continental Air Lines, Inc.*, 780 F.2d at 1227 (citing *Pension Benefit Guar. Crop. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983)).  Thus, "[w]hen a proposed transaction specifies terms for adopting a reorganization plan, 'the parties and the district court must scale the hurdles erected in Chapter 11.'"  *Id.* at 1226 (quoting *In re Braniff Airways, Inc.*, 700 F.2d at 940).  But "post-petition, pre-confirmation transactions outside the ordinary course of business may be required and that each hearing on a § 363(b) transaction cannot become a mini-trial on plan confirmation."  *Id.* at 1228.  The compromise, then, is "that when an objector to a proposed transaction under § 363(b) claims that it is being denied certain protection because approval is sought pursuant to § 363(b) instead as part of a reorganization plan, the objector must specify exactly what protection is being denied."  *Id.*

Although winding, Hoffman's opposition invokes 11 U.S.C. § 1129(b)(2)(A)(i)(II) as a basis to assert that the proposed sale will foreclose any ability to refinance the debt owed to AMAG

and propose "fair and equitable" treatment of AMAG's secured claim. [ECF Doc. 473, at 8 & 22–25]. Hoffman references an unsigned, non-binding term sheet for a $3.375 million loan that was attached to the Debtor's amended disclosure statement filed on April 15, 2020. [ECF Doc. 147-1]. She asserts that AMAG's secured claim "can be paid in whole or in part by [that proposed financing], with an interest rate appropriate for a 'cram down' of a portion of [AMAG's] claim, under the guidelines set forth in *Till v. SCB Credit Corp*, 541 U.S. 465, 476 & n.14 (2004.)." [ECF Doc. 473, at 8]. It is true that the Court denied the Debtor's amended disclosure statement without prejudice in September of 2020 when it appointed the Trustee. [ECF Doc. 308]. But the Court heard credible testimony at the evidentiary hearing on the instant motions that Susan and Peter Hoffman have failed over the course of the last year to present the Trustee with feasible refinancing options for the AMAG debt owed by the Debtor that would allow Susan Hoffman to retain possession of the Properties. *See* Hr'g Tr. 1-91:6 to 1-94:22. Indeed, no disclosure statement or plan of reorganization has been filed in well over a year and only now—after the evidentiary hearing on the Trustee's Settlement/Sale Motion—did Susan Hoffman and RSB propose a new plan of reorganization. [ECF Docs. 531, 532, 562 & 563]. Nevertheless, nothing in the Bankruptcy Code requires the Court to consider a competing plan of reorganization before approving a motion for sale of property under § 363(b).

Citing 11 U.S.C. § 365, Hoffman further contends without authority that the proposed sale is a *sub rosa* plan because the Trustee is required to accept or reject the Leases in any plan of reorganization. [ECF Doc. 473, at 18].[10] Nothing in the text of § 365 supports that belief.

---

[10] Lessees RSB and PicturePro adopted this argument as well in their post-trial brief. [ECF Doc. 528, at 8–9].

2. *The Trustee has articulated a sound business justification for selling the Properties outside of the ordinary course of business at private auction*

Hoffman asserts that the Trustee has failed to articulate a business justification for selling the Properties without using a commercial real estate broker to effectuate a private sale of the Properties. [ECF Doc. 471, at 5–6]. She asserts that utilizing an auction process advertised and conducted by the Trustee will not maximize the property of the estate and believes that the Trustee lacks a sound business justification in doing so because "he never addressed this proposed settlement to Mrs. Hoffman, RSB or [PicturePro] prior to filing." [ECF Doc. 471, at 6].

Although Susan Hoffman stated in her opposition to the Settlement/Sale Motion that she "intend[e]d to present the testimony of a well-established broker of commercial real estate in New Orleans, who will opine that this auction process will result in lower proceeds to the estate than a traditional listing for sale," [ECF Doc 471, at 6–7], no such testimony was adduced at the evidentiary hearing. The Trustee expressed his business justification for selling the Properties: (1) the current long-term, insider Leases cannot service the debt to AMAG, which holds a first-position secured lien on all of the Debtor's assets; (2) at this time, the estate has no unsecured creditors, but continues to accrue significant administrative expenses; and (3) no feasible refinancing options for the AMAG debt have been presented to the Trustee in the last year. *See* Hr'g Tr. 1-88:21 to 1-89:1; 1-91:6 to 1-94:22; 1-118:4 to 1-122:9; 1-148:16–20. Considering the testimony of the Trustee in light of the deference owed to his exercise of business judgment, this Court finds that the Trustee has articulated a sound business justification to sell the Properties pursuant to § 363(b).

    *3.  The Trustee may sell the Properties free and clear of all encumbrances and
interests pursuant to §§ 363(f)(1) and (f)(4)*

Lessees and insiders RSB and PicturePro do not appear to dispute that their leasehold

interests in the Properties are inferior in priority to the secured lien held by AMAG on all of the

Debtor's assets, as they were recorded after the notes and mortgages AMAG purchased from

Hancock Whitney in 2013.  [ECF Doc. 512, at 1].  Because the Lessees' interests are inferior to

AMAG's secured lien, they would not survive foreclosure by AMAG under Louisiana law without

subsequent recordation of a new lease or ratification of the existing leases.  *See P.J.'s Army Surplus

& Co. v. G.D. & G.*, 635 So. 2d 1217, 1218–19 (La. App. 5 Cir. 1994) (citing LA. CODE CIV. PROC.

art. 2376; *T.D. Bickham v. Hebert*, 432 So. 2d 228 (La. 1983)).  The Lessees assert that state

foreclosure law cannot serve as the "applicable nonbankruptcy law" that allows the Trustee to sell

the Properties free and clear of encumbrances under § 363(f)(1).  [ECF Doc. 472, at 12 (citing

*Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 698 (S.D.N.Y. 2014); ECF Doc. 528, at 15–16].

The facts of the case at bar are exceedingly similar to those considered by the United States

Court of Appeals for the Ninth Circuit in *Pinnacle Restaurant at Big Sky, LLC v. CH SP

Acquisitions, LLC (In re Spanish Peaks Holdings II, LLC)*, in which a chapter 7 trustee moved the

court to sell substantially all of the debtor's assets free and clear of unexpired, long-term, below-

market, insider commercial leases.  872 F.3d 892, 894–96 (9th Cir. 2017).  Those leasehold

interests were inferior to the mortgage on the debtor's property held by the debtor's largest creditor.

*See id*.  The court was tasked with determining whether those unexpired, inferior leases survived

a sale of the debtor's property pursuant to § 363(f)(1).  Acknowledging that Montana state law

extinguishes inferior leases upon a foreclosure sale to satisfy a mortgage, and applying accepted

rules of statutory interpretation, the court held that the plain text of § 363(f)(1) does not exclude

state foreclosure law from "applicable nonbankruptcy law" and allows the sale of the debtor's

property free and clear of all interests and encumbrances when "applicable nonbankruptcy law
permits sale of such property free and clear of such interest." *See id*. at 900.  As further observed
by the court:

> [The debtor's] bankruptcy proceeded, practically speaking, like a foreclosure
> sale—hardly surprising since its largest creditor was the holder of the note and
> mortgage on the property.  Indeed, had SPH not declared bankruptcy, we can
> confidently say that there would have been an actual foreclosure sale.  Such a sale
> would have terminated the [unexpired, inferior] leases.  Section 363(f)(1) does not
> require an actual or anticipated foreclosure sale.  It is satisfied if such a sale would
> be legally permissible.

*Id*.

This Court agrees with and adopts the *Spanish Peaks* court's statutory interpretation of the
plain text of § 363(f)(1) and declines to rewrite that section of the Bankruptcy Code to expressly
exclude state foreclosure law from "applicable nonbankruptcy law"—as would be required to
accept the Lessees' interpretation of § 363(f)(1).  *See Southland Royalty Co. LLC v. Wamsutter
LLC (In re Southland Royalty Co. LLC)*, 623 B.R. 64, 97–98 (Bankr. D. Del. 2020).  And, as
discussed below, the Court finds no conflict with a plain reading of § 363(f)(1) and the function
of § 365 of the Bankruptcy Code.  Thus, the Trustee here may sell the Properties free and clear of
RSB's and PicturePro's leasehold interests pursuant to § 363(f)(1).

Further, the Trustee asserts that he may also sell the Properties free and clear of
PicturePro's leasehold interests under § 363(f)(4) because that Lease is subject to a bona fide
dispute.  PicturePro contests the existence of a bona fide dispute regarding its Lease, citing the fact
that the Trustee waited until September 2021 to initiate an adversary proceeding to avoid the Lease
under 11 U.S.C. § 544 and 547 and to collect past due rent and has never issued a formal notice of
default under the Lease.  *See* Hr'g Tr. 43:6–14; [ECF Doc. 528, at 3, 16].  Many courts have found
that the filing of an adversary proceeding is not required to demonstrate the existence of a bona

fide dispute under § 363(f)(4). *See, e.g.*, *In re Gaylor Grain, L.L.C.*, 306 B.R. 624, 627–28 (B.A.P. 8th Cir. 2004) (citing cases). Nevertheless, although recently filed, the Trustee has in fact filed an adversary proceeding to avoid the PicturePro lease. The Trustee testified that the PicturePro lease has been in default at least since the date he entered the case. *See* Hr'g Tr. 1-120:1–8. The Trustee also informed the Court that, although PicturePro has asserted a right to a set-off of rent, he has never agreed to abate or set off the rent. *See* Hr'g Tr. 1-120:9–16. The Trustee further recounted pertinent facts pleaded in the adversary proceeding seeking to avoid the PicturePro Lease: that the Debtor amended PicturePro's lease on the eve of bankruptcy to memorialize terms less favorable to the estate, *e.g.*, the new, unrecorded lease now requires the estate to pay property taxes instead of PicturePro. *See* Hr'g Tr. 1-120:17 to 1-121:6; [Adv. No. 21-1033, ECF Doc. 1, ¶ 6–8]. Even Peter Hoffman, testifying as a representative of PicturePro, stated plainly on direct examination that "it's fair to say that [the rent is] in dispute." *See* Hr'g 53:8–54:1. Based on the record before it, the Court finds that the Trustee has demonstrated an "objective basis for either a factual or legal dispute as to the validity of the debt." *In re Gaylord Grain, L.L.C.*, 306 B.R. at 627–28 (citations omitted); *see also In re Patriot Place, Ltd.*, 486 B.R. 773, 815 (Bankr. W.D. Tex. 2013). The Court thus finds that the Trustee has a second basis under § 363(f)(4) that allows him to sell the Properties free and clear of the PicturePro Lease.

> ### 4. The Trustee has not rejected the Leases pursuant to § 365 nor is he required to do so in order to sell the Properties under § 363

Section 365 of the Bankruptcy Code governs executory contracts and unexpired leases and provides remedies for rejected leases under which the debtor is the lessor. *See* 11 U.S.C. § 365(h). But the Trustee here has not rejected the Leases. As explained by the *Spanish Peaks* court:

> Although undefined in the Code, a "rejection" is universally understood as an affirmative declaration by the trustee that the estate will not take on the obligations of a lease or contract made by the debtor. *See, e.g., Eastover Bank for*

> *Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1082 (5th Cir. 1994). A sale of property free and clear of a lease may be an effective rejection of the lease in some everyday sense, but it is not the same thing as the "rejection" contemplated by section 365.

872 F.3d at 899. Nothing in the text of § 365 requires a trustee to reject the Leases through a plan process or prior to sale of the Properties. "In sum, section 363 governs the sale of estate property, while section 365 governs the formal rejection of a lease." *Id.* "Where there is a sale, but no rejection (or a rejection, but no sale), there is no conflict." *Id.*; *see also In re R.J. Dooley Realty, Inc.*, No. 09-36777, 2010 WL 2076959, at *7 (Bankr. S.D.N.Y. May 21, 2010) ("Section 365(h) applies when a debtor-lessor remains in possession of its property and rejects a lease, not when the debtor-lessor sells property subject to an interest (such as a lease) free and clear of that interest pursuant to Section 363. Thus, when the debtor-lessor sells property subject to a lease free and clear of that lease pursuant to Section 363(f), the Court will not apply Section 365(h)." (citing *In re Cheslock-Bakker & Assoc., Inc. v. Kremer (In re Downtown Athletic Club)*, No. M-47 (JSM), 2000 WL 744126 (S.D.N.Y. June 9, 2000)).

Quite simply, there is no interplay here between sections 363 and 365.[11]

---

[11]  This Court fully adopts the rationale of the *Spanish Peaks* court:

> We agree that section 365 embodies a congressional intent to protect lessees. But that intent is not absolute; it exists alongside other purposes and sometimes conflicts with them. To some extent, protecting lessees reduces the value of the estate—property presumably fetches a lower price if it is subject to a lease—and is, therefore, contrary to the goal of "maximizing creditor recovery," another core purpose of the Code. The statutory text is the best assurance we have that we are balancing competing purposes in the way that Congress intended.

872 F.3d at 900–01 (quoting *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC (In re Qualitech Steel Corp. & Qualitech Steel Holdings Corp.)*, 327 F.3d 537, 548 (7th Cir. 2003)).

5. *The Trustee's proposed sale of the Properties satisfies § 363(e)*

Lessees RSB and PicturePro assert that, regardless of whether the Trustee's proposed sale satisfies § 363(f)(1) and § 363(f)(4), they each continue to hold an "interest" in the Properties and object to the Settlement/Sale Motion to the extent it proposes a sale of the Properties without providing them with mandatory "adequate protection of such interest" under § 363(e) of the Bankruptcy Code. [ECF Doc. 455, ¶¶ 36–46; ECF Doc. 472, at 6–9; ECF Doc. 512, at 1–2].

"The most common form of adequate protection is to have the lien or other interest attach to the proceeds of the sale." 3 COLLIER ON BANKRUPTCY ¶ 363.06[9] (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing H.R. Rep. No. 595, 95th Cong. 1st Sess. 345 (1977)). By providing that the proceeds from the sale of the Properties will attach to the Lessee's interests with the same validity, extent, and priority that otherwise exist, *see* Settlement/Sale Motion, ¶ 41, the Trustee has, in fact, provided adequate protection to the Lessees, *see In re Elk Grove Vill. Petroleum, LLC*, 562 B.R. 708, 716 (Bankr. N.D. Ill. 2016) (citing *Wilmington Tr., N.A. v. Boh Park Highlands, NV, L.P (In re Nov. 2005 Land Inv'rs, LLC)*, 636 F. App'x 723, 726 (9th Cir 2016); *Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 257 (2d Cir. 2010)).

But "[i]n effect, protection is required only for the value of an entity's interest in the property." 3 COLLIER ON BANKRUPTCY ¶ 361.02[2] (Richard Levin & Henry J. Sommer eds., 16th ed.). The Court observes that none of the Leases here contain nondisturbance clauses that would ensure that the Leases between the Lessees and the Debtor would continue under any circumstances, *e.g.*, foreclosure by AMAG. *See* Exs. 1, 3 & 5. As RSB and PicturePro acknowledge, the value of their interests is anticipated to be zero, as the amount due to AMAG would swallow all sale proceeds. [ECF Doc. 512, at 1]. Indeed, as much as the attachment of interests to the sale proceeds provides adequate protection to RSB and PicturePro, it also provides

adequate protection to senior creditor AMAG, which consents to the sale, thereby removing RSB's and PicturePro's interests from the Debtor's Properties. *See In re Elk Grove Vill. Petroleum, LLC*, 562 B.R. at 716. But the value of RSB's and PicturePro's interests in the Properties is zero also because the Properties can be sold free and clear of their interests under § 363(f)(1); thus, they have no interests to protect. *See, e.g.*, *In re Dulgerian*, No. 06-10203, 2008 WL 220523, at *5 (Bankr. E.D. Pa. Jan. 25, 2008).

RSB and PicturePro, therefore, take a different tack and assert that they "are entitled to adequate protection that is the indubitable equivalent of the leasehold interest that they currently hold in the property, which can only be achieved, under this set of facts, by continued possession [of the Properties]." *Id.* at 1–2. But offering such adequate protection to creditors with no interests to protect "would catapult [RSB and PicturePro] ahead of [their] position behind secured, administrative, and priority unsecured creditors, in complete contravention of the priorities of the Bankruptcy Code." *In re R.J. Dooley Realty, Inc.*, No. 09-36777, 2010 WL 2076959, at *7 (Bankr. S.D.N.Y. May 21, 2010).

> 6. *The Court finds that the estate's best interests are served by the proposed settlement and sale of the Properties*

No opponents of the Trustee's Settlement/Sale Motion have contested the Trustee's ability to settle AMAG's secured claim under Bankruptcy Rule 9019.[12] In evaluating whether the proposed settlement here is fair and equitable and in the best interest of the estate, this Court has examined the record before it: (1) there is but one creditor remaining in this case and that creditor

---

[12] Hoffman contested this Court's jurisdiction to approve the settlement if it involves dismissing Hoffman's appeal of the judgment granting summary judgment in favor of AMAG. [ECF Doc. 473, at 10]. As noted, the District Court has dismissed her appeal. *See supra* note 6. No stay of this proceeding pending appeal has been requested or granted; therefore, this Court retains jurisdiction to consider the Trustee's Settlement/Sale Motion and the related motions.

has a blanket lien over all of the Debtor's assets; (2) the Trustee evaluated the litigation lodged

against AMAG by the then-debtor-in-possession and chose not to appeal this Court's judgment

granting summary judgment to AMAG; (3) the sole member of the Debtor has unequivocally

indicated that she will continue to attempt to litigate with AMAG, in spite of the District Court's

ruling that she lacks standing to appeal on her own behalf or on behalf of the Debtor; (4) that

litigation—without an end in sight—continues to drive up the administrative costs of this estate;

(5) the Debtor's income from long-term, insider leases cannot service the debt owed to AMAG;

and (6) after more than two years of receiving the benefits of bankruptcy, the principals of the

Debtor have been unable to secure realistic, firm financing to take out AMAG.    In sum, no

reorganization option exists any longer for this Debtor, only liquidation.    For those reasons, this

Court finds that the Trustee's Settlement/Sale Motion is fair and equitable and in the best interests

of the estate pursuant to Bankruptcy Rule 9019.

> 7. *AMAG is entitled to 18% post-petition interest and reasonable attorneys' fees and costs as an oversecured creditor under § 506(b)*

In its objection to the § 506(b) Motions, Arrowhead weakly asserts that AMAG is not

entitled to post-petition interest and reasonable attorneys' fees and costs under § 506(b) because it

is not, in fact, oversecured.  [ECF Doc. 429, ¶¶ 14–27; ECF Doc. 496, at 1–3].[13]  The evidence

before the Court regarding valuation of the Properties, however, indicates that the value of the

Properties is increasing and supports a finding that AMAG is oversecured.  *See In re T-H New

Orleans Ltd. P'ship*, 116 F.3d at 798.  AMAG's prepetition claim totals $4,623,618.26.  ███

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

---

[13]    The Court notes that Arrowhead made this argument prior to the evidentiary hearing on the Trustee's Settlement/Sale Motion and related motions.  [ECF Doc. 429].

████████████████████████████████████████████

███████████████████████████████

Appearing to concede that AMAG is an oversecured creditor, at least for some amount of time during the Debtor's bankruptcy case, Arrowhead acknowledges AMAG's right to non-default, contractual interest calculated at a rate of 12%. [ECF Doc. 429, ¶ 31; ECF Doc. 496, at 1–3]. It asserts that AMAG should be limited to that rate—or further limited to 5.75% based on the equities of the case. [ECF Doc. 429, ¶ 31; ECF Doc. 496, at 3–7]. Specifically, Arrowhead asserts that AMAG's post-petition interest rate should be capped at 5.25% because (i) prime interest rates and federal funds rates are comparatively very low to the contractual default rate, (ii) AMAG could have pursued its motion to terminate the automatic stay and foreclosed on the Properties sooner, a scenario in which it would not have received post-petition default interest; and (iii) AMAG never found itself at risk of non-payments given the value of the Debtors' Properties. *Id*.

The Court observes that, based on this Court's final judgment in Adversary Proceeding No. 19-1133, a lack of an objection to AMAG's proof of claim, and pursuant to § 502(a) of the Bankruptcy Code, AMAG holds an allowed prepetition claim for $4,623,618.26 (inclusive of $3,137,058.62 in principal balance, $1,469,606.66 in default interest, and $16,952.26 in attorneys' fees and costs). Proceeding on the notion that AMAG is an oversecured creditor entitled to § 506(b) post-petition interest and reasonable attorneys' fees, the Trustee seeks to settle AMAG's claim for a total of $6,004,961.46, comprised of: (i) $3,137,058.62 (AMAG's allowed prepetition principal balance), (ii) $2,507,972.27 in 18% contractual default interest (of which $1,469,606.66 is already allowed as prepetition 18% contractual default interest), and (iii) $360,230.57 in attorneys' fees and costs (of which $16,952.26 is already allowed). Essentially, the Trustee's

Settlement/Sale Motion proposes a compromise of AMAG's post-petition claim, limiting it to $1,038,365.61 in post-petition 18% interest and $343,278.31 in post-petition attorneys' fees and costs, as part of a larger deal that he asserts benefits the estate.  Arrowhead identifies no specific entries that it deems are unreasonable in AMAG's invoices attached to its § 506(b) Motions totaling $348,295.40 through August 2021; thus, Arrowhead's objection is essentially limited to the portion of $1,038,065.61 in post-petition interest that is calculated above the rate of 12%—or approximately $400,000.  [ECF Doc. 429, ¶ 31].

In the Fifth Circuit, a presumption exists that oversecured creditors are entitled to contractual default interest "unless 'the higher rate would produce an inequitable . . . result.'" *Southland Corp. v. Toronto-Dominion (In re Southland Corp.)*, 160 F.3d 1054, 1059–60 (5th Cir. 1998) (quoting *Bradford v. Crozier (In re Laymon)*, 958 F.2d 72, 75 (5th Cir. 1992)).  Here, however, the Court is not faced with straightforward consideration of AMAG's § 506(b) Motions and a balancing of the equities in this case.  Rather, the current posture of this case is not unlike that of *AGE Refining, Inc.*, in which the bankruptcy court considered several matters so "intertwined" that "the resolution of one resolve[d] the others," *i.e.*, (i) a Rule 9019 proposed settlement between a chapter 11 trustee and a secured creditor, (ii) a motion by unsecured creditors to value the secured creditor's collateral and (iii) the corresponding unsecured creditors' objection to the secured creditor's claim for post-petition interest.  *See Official Comm. of Unsecured Creditors v. Moeller (In re AGE Refining, Inc.)*, 801 F.3d 530, 535–38 (5th Cir. 2015).  In reviewing the actions of the bankruptcy court in approving the chapter 11 trustee's proposed settlement of a secured lender's claim, the Fifth Circuit held that the bankruptcy court did not err when it declined to undertake a precise determination of the value of the secured lender's collateral

27

under § 506(a) in the context of simultaneously evaluating the proposed settlement agreement under Bankruptcy Rule 9019. *See id*. at 544–45.

For the reasons discussed above, the Court finds that the Trustee has satisfied his burden under § 363 to sell the Properties free and clear of all interests and encumbrances. This Court also finds that the Settlement/Sale Motion is fair and equitable and in the best interests of the estate under Bankruptcy Rule 9019. No party specifically opposes the Trustee's Bid Procedures Motion. The evidence before the Court here strongly supports a finding that AMAG is an oversecured creditor and thus the presumption exists that it is entitled to contractual default interest. Neither Hoffman nor Arrowhead rebutted that presumption.[14] In light of the record before the Court and its findings, this Court finds it unnecessary to make a specific determination of the absolute value of AMAG's secured collateral under § 506(a) and allows AMAG, as an oversecured creditor, $1,038,365.61 in post-petition 18% interest and $343,278.31 in post-petition attorneys' fees and costs, on top of its allowed prepetition claim.

## CONCLUSION

Based on the foregoing findings of fact and conclusions of law, this Court

(1) **GRANTS** the *Motion To Approve (I) Settlement under FRBP 9019; and (II) Sale of Real Property Pursuant to 11 U.S.C. § 363 As Part of Settlement*, [ECF Doc. 418], as amended, [ECF Doc. 423], filed by the Trustee and **OVERRULES** all objections;

(2) **GRANTS** the *Motion for Entry of Order (I) Establishing Bidding Procedures; (II) Scheduling the Auction for the Sale of Debtor's Real Property Assets; and (III) Granting Related Relief*, [ECF Doc. 419], filed by the Trustee, and **OVERRULES** all objections;

(3) **DENIES** the *Motion of Party-in-Interest Arrowhead Capital Finance, LTD. Objecting to Computation of Interest, Legal Fees and Costs Payable to AMAG, INC*., [ECF Doc. 429];

---

[14]    Also, the fact that Arrowhead is no longer a party in interest in this case fatally undermines its equitable arguments in favor of reducing AMAG's allowable interest under § 506(b).

(4) **DENIES** the *Motion for Adequate Protection Pursuant to Section 363(e), and Motion To Require the Debtor To Assume or Reject Leases with Incorporated Memorandum*, filed by Royal Street Bistro, LLC and PicturePro, LLC, [ECF Doc. 455];

(5) **GRANTS** the *Motion for Application for Compensation for Services Rendered and Reimbursement of Expenses in Accordance with Bankruptcy Rules 2016 and 9013, Local Rules 2016-1 and 9013-1 and U.S.C 11 § 506(b) in Accordance with the Amended Motion to Approve (I) Settlement under FRBP 9019, and (II) Sale of Real Property pursuant to 11 U.S.C. § 363 AS PART OF SETTLEMENT, [DOC. 423]*, [ECF Doc. 478], filed by AMAG, Inc., and **OVERRULES** all objections; and

(6) **GRANTS** the *Application for Approval of an Award of Secured Interest Pursuant to 11 U.S.C. § 506(b) in Accordance with the Amended Motion to Approve (I) Settlement under FRBP 9019, and (II) Sale of Real Property pursuant to 11 U.S.C. § 363 AS PART OF SETTLEMENT, [DOC. 423]*, [ECF Doc. 479], filed by AMAG, Inc., and **OVERRULES** all objections.

Counsel for the Trustee and AMAG are instructed to submit proposed orders to chambers granting the Settlement/Sale Motion, the Bid Procedures Motion, and the § 506(b) Motions in accordance with this Order.

**SO ORDERED.**

New Orleans, Louisiana, this 30th day of November, 2021.

_____
    MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE